Dillon, J.
One Alfred Wilcox died some time prior to 1858, seized of about one hundred and twenty-four acres of land in this county, leaving-four children his only heirs, to-wit: One son, John L. Wilcox, and three daughters, Harriet-1. Hoffman, Jane A. Tip-ton and Emily Detweiler.
On May 17, 1858, Harriet I. Hoffman and her husband quit-claimed their one-fourth interest to their brother, John L., and thereby he became the owner of the undivided one-half.
*270 On October 30, 1858, John L. Wilcox and his wife and Emily Detweiler and her husband deeded their three-fourth interest in thirty-seven acres of the property off the east side thereof to William W. and Jane A.’Tipton.
On November 6, 1858, John L. Wilcox and wife deeded his one-half interest in the remaining eighty-seven acres to Abraham Detweiler, the husband of Emily.
On May 8,1865, Jane A. Tipton and her husband conveyed all their title in the eighty-seven acre tract to four grantees, to-wit: John L. Wilcox and Ester F. Wilcox, his wife, Abraham Det- ' weiler and Emily, his wife.
Prior to this last-named deed, it will be observed that Emily still owned her undivided one-fourth in the eighty-seven acres, and her husband had acquired in his deed the undivided one-half thereof from John L. Wilcox. By this deed of Tipton and wife, however, to Detweiler and his wife and to John L. Wilcox and his wife, he conveyed to each one of the said parties an undivided sixteenth, so that by this deed the legal title stood as follows:
John L. Wilcox owned an undivided one-sixteenth; Ester F. Wilcox one-sixteenth; Emily Detweiler five-sixteenths; Abraham Detweiler nine-sixteenths.
It is at this point that the controversy in.this case has its start, because as has already been observed, although John L. Wileo-x and wife, by their deed- of November 6, 1858, had quit-claimed all their title to Detweiler, yet this last-named quit-claimed deed placed back in John L. Wilcox and his wife each a one-sixteenth undivided interest, so that Detweiler and his wife together only owned an undivided fourteen-sixteenth of this property-.
The- plaintiff in this ease derived his record title from Abraham and Emily Detweiler, through a rather numerous succession of subsequent owners, and therefore, áo far as the record title is concerned, there has during all these years remained outstanding an undivided two-sixteenths part in John L. and Ester F. Wilcox and their heirs.
*271 While the said Abraham Detweiler and wife did not personally live upon the real estate in question, they lived near thereto, and occupied the same as owners exclusively, exercising all the prerogatives of owners, paid the taxes thereon, rented the same and collected rents.. After Abraham’s death his widow and children continued so to possess and occupy said real estate until by their deeds it passed to their successor in title and the various successors in title and have so continued to hold' and occupy the real estate up to the present time. The defendants here are two of the three heirs of the said John L. and Ester Wilcox, the third heir having quit-claimed his interest to plaintiff. The petition makes the usual allegations as provided in Revised' Statutes, 5779, for the purpose of quieting title to said real estate, and also in the same petition asserts that the insertion of the names of John L. and Ester Wilcox, .as named in the quit-claim deed from Tipton and wife, was error and asks its correction.
The separate answers and cross-petitions of the defendants consist of a general denial of any error in said deed to John L. and Ester, and by cross-petition ask for partition of their respective interest in the realty, each claiming the undivided one-twenty-fourth therein; the answers further plead the statutes of limitation of twenty-one years under Revised Statutes, 4977, of four years under Revised Statutes, 4982 and of ten years under Revised Statutes, 4985, i. <?., “actions not heretofore provided for. ’ ’
From the very nature of a pure and simple petition under Revised Statutes, 5779, to quiet title, and which petition does not attempt to set forth any other purpose, cause of action or demand, it follows that none of the statutes of limitations apply nor can they be successfully pleaded against such a petition. This follows because a petition of this character does not purport to assert a cause of action but is a special proceeding whose object is to challenge and provoke any causes of action which may exist in the premises, and by which it may be claimed some outstanding title or right exists in the defendants as to the real estate under consideration. As to these causes of action thus provoked, and the defenses or counter-actions of plaintiff, the *272 statutes of limitations may be properly invoked. In the ease at bar, therefore, the court considers the plea of the statutes of limitations as to the petition to apply only to that cause which the plaintiff has voluntarily set forth in his petition, to-wit: That the name of John L. and Ester in the deed of 1865 was error, and the prayer for the correction of same may be considered by the court. But there is a question in my mind whether or not such a plea can be made because of the saving clause of Revised Statutes, 4974, which provides that none of the statutes of limitations shall apply “to an action by a vendee of real property, in possession thereof, to obtain a conveyance of it.”
Leaving this question open it is apparent that so far as naked legal title is concerned, the parties are tenants in common. The plaintiff, however, relies on two propositions:
First. The continuous adverse possession of himself and those under whom he claims for the entire period since 1865.
Second. That the evidence shows that the deeds were purely partition deeds and that therefore the rule that a prior quitclaim deed will not convey after-acquired realty does not apply, but that in such cases as this a covenant will be implied by law in the first deed for the attainment of justice.
In the case of deeds exclusively for partition, and where no other considerations are involved, the law for the enforcement and attainment of justice makes an exception to the usual rule for partition purposes, and such deeds of quit-claim will often be treated by the courts as containing a covenant implied by law, so as to carry with any after-acquired title in the real estate first conveyed, but I do not think there is sufficient evidence before the court to warrant this court in finding that the various deeds of quit-claim in this case, many of which I need not mention, were purely partition deeds, but on the contrary there is much evidence that some of the quit-claims were the direct result of bargain and sale. The plaintiff’s claim therefore must rest upon his first proposition. It is well settled that the statute of limitation does not begin to run in favor of one tenant in common who is in possession, because in such case the act of possession of one tenant is not inconsistent with his rights in the prem *273 ises of his co-tenants. Nor will adverse possession be recognized as existing between tenants in common, until some overt act or acts take place of an unequivocal character “clearly indicating an assertion of ownership of the entire premises to the exclusion ■of the right of the co-tenant.” Youngs v. Heffner, 36 Ohio St., 232.
Such overt'act or acts must be so unmistakable that the co-ten'ant must have had or ought to have taken notice that the tenant in possession claimed the entire ownership. Hogg v. Beerman, 41 Ohio St., 81.
In the case 'at bar the evidence shows that John L. and Ester Wilcox did nothing with respect to any act of ownership. The Detweilers continued to occupy and use the real estate—it was on the tax duplicate in his name. The Detweilers paid the taxes. There is no evidence that they ever paid any rent to Wilcox or to his .wife or that any other acts took place between them indicating joint ownership.
John L. Wilcox died about five years after this deed, his wife having, died before he died. After their death there was no change with respect to the real estate on the part of his estate or heirs. Upon the death of Abraham Detweiler, his heirs, in 1880, by a deed duly recorded conveyed the premises to the widow, Caliste Emily Detweiler, this deed being recorded about the month of September, 1880. Caliste Emily continued in possession and occupancy of the real estate in the same manner as her husband until October 10, 1890, when by warranty deed she conveyed a part thereof to a predecessor of the plaintiff and subsequently conveyed the remainder of the real estate to a predecessor in title to this plaintiff.
John L. Wilcox was more familiar perhaps with this real estate and more active in its control after the death of his father than any of the other heirs, .as-he was the only son.
The evidence satisfies me that each party has from the beginning treated this property and the title thereof in exactly the same manner, to-wit: The Detweilers have treated it as their exclusive property, and Wilcox and wife and their heirs after their death, have treated it in the same manner. For this reason, *274 therefore, there has never been any particular declaration of Detweilers or their successors in title to the- Wilcoxes or their heirs.
There seems from their mutual treatment of it to have been no necessity or cause of any particular assertion or demand in regard to that, concerning which there was evidently no dispute. The impression must be gained from the evidence that from the date of the Tipton deed, the Detweilers thought, believed and acted as if they owned the property, and Wilcox and his wife thought so too. The object of the law in establishing of title by adverse possession is the necessity for repose, a situation, with reference to real estate which is thus favored. The reason of the rule which requires, acts as clearly indicating an assertion of ownership in the entire premises by a tenant in common is self-evident. To what extent and in what manner one tenant must thus assert by his acts or declarations, and declare his exclusive ownership, is not to be determined by any particular or fixed line of conduct, acts or declarations, but must be determined as ia matter of law from the particular facts of each case. ;Even long lapse of time such as has existed in the case at bar may be one fact to be considered by the court as indicating whether or not the possession has been adverse.
It might be sufficient under all the facts of this case to base the running of the statute from the time of the Tipton deed itself, because the evidence, including all the prior quit-claim deeds, satisfies me that John L. and Ester themselves treated this after-acquired fractional two-sixteenths as having been previously conveyed away by them to Detweiler and wife, and from that day they knew and believed that the Detweiler ownership was exclusive in the entire tract. Again we have a direct and positive assertion of exclusive ownership in the deed of September 13,1880, whereby the Detweiler children conveyed a portion of this property to their mother.
It is claimed by the defendants that by reason of the fact that the plaintiff herein obtained .and accepted a quit-claim deed from one of the other heirs of John L. and Ester that as a matter of law this presumes, an acknowledgment of co-tenancy. That there may be cases and circumstances where such an act might be evi *275 dence of acknowledgment of the existence of co-tenancy may be granted. Bnt I can not adopt such ruling in this case; on the contrary it is the policy of the law to-encourage peace and peaceable settlements of disputed titles.
Charles Aubert and L. D. Lilly, for plaintiff.
McNeal & 80ns and Johnson & Johnson, for defendants.
The court, therefore, would never establish a rule of presumption from such an act. It is not only a right and privilege of any person to purchase his peace from one who has no claim or title, but the law would incline to look with favor upon settlements which the parties might make between themselves. To announce a different rule would be to discourage every act of settlement or compromise and seek to prevent the parties from thus settling their own disputes. To do so would be the establishment of a rule of presumption .against them.
The view here entertained requires me to grant the relief prayed for by the plaintiff and a decree may be drawn accordingly. The defendants’ exceptions are noted and the appeal bond fixed at $100.