[Cite as *Karras v. Karras*, 2017-Ohio-5829.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| TERRY J. KARRAS, TRUSTEE | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27403 |
| | : | |
| v. | : | T.C. NO. 15-CV-941 |
| | : | |
| CATHERINE A. KARRAS | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the _____14th_____ day of _____July_____, 2017.

. . . . . . . . . . .

CANICE J. FOGARTY, Atty. Reg. No. 0010046 and CHARLES F. ALLBERY III, Atty. Reg. No. 0006244, 137 N. Main Street, Suite 302, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellee

ANDREW M. ENGEL, Atty. Reg. No. 0047371 and THOMAS W. KENDO, JR., Atty. Reg. No. 0058548, 7925 Paragon Road, Dayton, Ohio 45459
      Attorneys for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Catherine A. Karras appeals from a judgment of the Montgomery County Court of Common Pleas which granted Terry Karras's motion for summary judgment on various issues pertaining to the title of several parcels of land located on Wilmington Pike and found that Catherine Karras did not have any ownership interest in those parcels.

**Background and Procedural History**

{¶ 2} The Wilmington Heights Shopping Center in Kettering is a commercial shopping center operated by a business partnership known as Karras Realty. There were five equal partners – all members of the Karras family – when the property was purchased in 1956, and they or their successors continue the business partnership today. Terry Karras, as trustee of the James G. Karras Trust, is one of the partners, and she is the managing partner of Karras Realty. The other partners are: Lula Karras (as trustee of the Pete G. Karras Family Trust); Andreas Karras or his successors (as trustee of the Andreas G. Karras Family Trust); OJUS, an Ohio limited liability company; and Katherine Karras Elias. Catherine A. Karras is Andreas Karras's former wife, and the similarity of her name to the name of business partner Katherine Karras Elias is at the root of this case.

{¶ 3} The land on which the Wilmington Heights Shopping Center sits consists of four contiguous parcels of land, all of which are owned by the partnership. We will refer to these parcels collectively as "the property" or the Wilmington Heights Shopping Center.

{¶ 4} Catherine and Andreas Karras divorced on January 28, 1981. Their divorce decree provided, among other things:

11. Defendant [Andreas] shall henceforth be the sole and absolute owner of all his various business interests whether sole proprietorships, corporate, shareholdings or partnership interests and all other interests in real property not hereinbefore specifically referred to and Plaintiff [Catherine] shall have no claim upon any of said property interests and/or business interests.

12. Each party hereto shall, upon the request of the other, execute and

acknowledge any and all deeds or other instruments of conveyance to enable such other party to sell or otherwise dispose of his or her own property, be it real or personal, free from any inherent right of inchoate dower therein.

{¶ 5} The divorce decree did not distribute any real property to Catherine. None of the specific provisions of the divorce decree referred to the Wilmington Heights Shopping Center, so its distribution fell under paragraph 11, regarding the distribution of Andreas's business interests and interests in real property.

{¶ 6} On the day that the final judgment and decree of divorce was entered, quit claim deeds were executed related to two of the parcels on which the Wilmington Heights Shopping Center is situated. (A quit claim deed transfers any interest or claim which the grantor possesses in the property to the grantee. Black's Law Dictionary 1251 (6th Ed.1990).) However, the quit claim deeds, which had been prepared by the attorney who represented Andreas in the divorce, contained the type-written name "Katherine Karras" in the text and under the signature lines; they were signed by "Katherine Karras" the same day. These deeds transferred all of "Katherine's" interests to Andreas.

{¶ 7} In 2014, when Karras Realty was apparently exploring the possibility of selling the Wilmington Heights Shopping Center, Chicago Title identified a cloud on the title of the property due to the appearance that Katherine Karras Elias, one of the owners of the property and one of the partners in Karras Realty, had signed quit claim deeds in 1981. This concern related to the document signed by "Katherine Karras" in January 1981, the same day as the divorce.

{¶ 8} In February 2015, Terry Karras filed a complaint to quiet title to the

Wilmington Heights Shopping Center properties. The complaint sought a determination that the signatures on the quit claim deeds executed in January 1981 were those of Catherine Karras, former wife of Andreas, rather than of Katherine Karras Elias, another owner of the property. The complaint also sought a declaration that Catherine Karras had no legal or equitable interest in the other two parcels which comprised the Wilmington Heights Shopping Center, for which quit claim deeds had not been executed.[1]

{¶ 9} Catherine Karras filed an answer and raised several affirmative defenses to Terry's claims. On December 2, 2015, Terry filed a motion for summary judgment; her motion was supported by her own affidavit, two warranty deeds and two quit claim deeds related to the property, and a copy of Catherine and Andreas Karras's 1981 decree of divorce. Catherine Karras moved to strike portions of Terry's affidavit. Catherine also filed a memorandum contra and a "cross motion for summary judgment," in which she asserted that there was no genuine issue of material fact that she still held an interest in the property; she alleged that she had held title separately from Andreas and that the divorce decree did not terminate her interest or order her to transfer it to Andreas. No evidentiary materials were attached to Catherine's filings.

{¶ 10} On June 3, 2016, the trial court granted Terry's motion for summary judgment and for a declaratory judgment, and implicitly overruled Catherine's motion for summary judgment. In its judgment, the trial court also granted in part and overruled in part Catherine's motion to strike portions of Terry's affidavit. On the same date, the trial

---

[1] Terry's complaint was styled as a "Quiet Title Action," not a declaratory judgment action, although it did ask the trial court to "declare" certain facts related to the title and the identity of the signatory of the quit claim deeds. However, Catherine's answer, Terry's motion for summary judgment, and the trial court's judgment all refer to the action as one for declaratory judgment.

court issued a Civ.R. 58(B) notice of final appealable order. Catherine appeals from the trial court's June 3, 2016, judgment, assigning as errors the court's decision to grant summary judgment to Terry and to deny her own motion for summary judgment.

{¶ 11} The central issue in Catherine's appeal and in both of her assignments of error is whether the trial court erred in concluding that there was no genuine issue of material fact that she (Catherine) had signed the 1981 quit claim deeds and that she had no current legal or equitable interest in the property. She also challenges the trial court's rejection of some of her affirmative defenses. We begin with the central issue of title to the property.

**Title to the Property**

{¶ 12} Catherine asserts that Terry did not meet her burden to establish that Catherine signed the quit claim deeds. She also claims that the divorce decree did not require her (Catherine) to transfer anything to Andreas and did not terminate her ownership interest in the shopping center property. She argues that the trial court must have erroneously relied on statements from Terry's affidavit that were stricken from the record to arrive at its conclusions.

{¶ 13} Prior to the trial court's decision granting Terry's motion for summary judgment, Catherine had sought to strike certain paragraphs of an affidavit submitted by Terry in support of the motion. These paragraphs contained information about when and how the questions related to ownership of the property had been discovered by the title company, about the cloud on the title being rooted in the similarity of Catherine Karras's and Katherine Karras Elias's names, and about whether Catherine had executed the quit claim deeds in question. In ruling on the motion to strike, the trial court found that several

of the paragraphs in question were background information intended to explain the request for a declaratory judgment and were not offered for the truth of the matter asserted; the trial court overruled the motion to strike these paragraphs. However, it did strike two paragraphs in which Terry made assertions about how the cloud on the title had arisen and about Catherine's having signed her name on the deeds as "Katherine."

{¶ 14} With respect to Terry's request for a declaratory judgment that the signatures on the quit claim deeds of January 28, 1981 were those of Catherine A. Karras, and not the signatures of Katherine Karras Elias, the trial court observed that the divorce decree of the same date stated that Catherine Karras shall have no claim upon any interests in property of her former husband, Andreas; the quit claim deeds were prepared by the same attorney who represented Andreas in the divorce, and they were executed on the same day that the decree of divorce was filed. Further, the provisions of the divorce decree clearly awarded Andreas's "business interests" to him, and Karras Realty is a family business. The decree made no provision for an award of any real property to Catherine, and it required both parties to "execute and acknowledge any and all deeds and other instruments" necessary to effectuate the property distribution specified in the decree. Based on these findings and Catherine's failure to "provide any evidence that the signature on the deed[s]" was Katherine Karras Elias's signature and not her own, the trial court found that she (Catherine) had signed the quit claim deeds and that there was no genuine issue of material fact that she had any legal or equitable interest in the two parcels transferred by the quit claim deeds.

{¶ 15} Moreover, the court found that, under the terms of the divorce decree, there was no genuine issue of material fact that Catherine had any legal or equitable

interest in the Wilmington Heights Shopping Center or any of the properties on which it was located, including the ones for which no quit claim deed was signed. The trial court concluded that, under the terms of the divorce decree, Catherine was not entitled to any share of Andreas Karras's business or real property interests. Thus, the trial court found that, even without the quit claim deeds, Catherine retained no ownership interest in any real property owned by Andreas Karras or Karras Realty at the time of the divorce, including the Wilmington Heights Shopping Center.

{¶ 16} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); Civ.R. 56(E). Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 17} We review a trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether,

as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

{¶ 18} Based on the nearly simultaneous entry of the divorce decree and the signing of the quit claim deeds, the clear provisions in the divorce decree that Catherine was not entitled to any interest in any real property and was required to execute deeds of conveyance, and the preparation of the quit claim deeds by Andreas's divorce attorney, the trial court reasonably concluded that Terry had met the initial burden of affirmatively demonstrating that no genuine issue of material fact existed that Catherine (not Katherine) had signed the quit claim deeds and that she (Catherine) did not retain any ownership interest in the property. The burden then shifted to Catherine to respond by setting forth specific facts that showed that there was a genuine issue of material fact for trial.

{¶ 19} Catherine did not present any evidence (or even a self-serving affidavit) in support of her position that she was not the person who signed the deeds or that she had exercised or asserted any indicia of ownership of the property in the more than 30 years since the divorce. Thus, the court did not err in granting Terry's motion for summary judgment or in implicitly overruling Catherine's motion for summary judgment. Although it might have been preferable to present evidence from Andreas, the divorce attorney, or another witness to the signatures on the quit claim deeds, it may have been difficult or impossible to present such evidence due to the passage of time. It is not apparent from the record that any of these people is still alive, and some clearly are not. Further, we disagree with Catherine's assertion that the trial court could only have reached the conclusion that it did based on improper reliance on the stricken portions of Terry's

affidavits.

{¶ 20} Catherine's assertion that she held title to the property independently from Andreas and that she therefore had an interest that survived the divorce is inconsistent with the evidence before the trial court in several respects. On the warranty deeds reflecting a 1977 transfer of the property,[2] Andreas and Catherine are listed repeatedly as "ANDREAS G. KARRAS and CATHERINE A. KARRAS, husband and wife," as are several other couples involved in the transaction; the trial court could have reasonably concluded that this reference and other evidence about the Karras Realty partnership suggested joint ownership by each couple. The fact that each spouse signed the deeds did not compel the conclusion that each owned a separate share. Moreover, the divorce decree granted Andreas sole ownership of "all other interests in real property not hereinbefore specifically referred to"; the shopping center property was not otherwise referenced in the decree, and thus was not excluded from this provision. In fact, the divorce decree did not reference any real property then held or to be retained by Catherine. If paragraph 11 of the divorce decree disposed of only Andreas's portion of the shopping center property and left Catherine with a separate interest, as she suggests, then the decree should have contained a provision related to property held by Catherine. It did not. The trial court did not err in concluding that there was no genuine issue of material fact that any ownership interest that Catherine had once held in the property was extinguished by the quit claim deeds and/or the divorce decree.

**Jurisdiction**

---

[2] Andreas and Catherine were both transferors and transferees of the property in this transaction; this transaction does not reflect their initial acquisition of the property.

{¶ 21} Catherine asserts that the trial court lacked jurisdiction to hear the case because Terry Karras did not join all "affected" parties, as required by R.C. 2721.12, which governs declaratory relief. She claims, for example, that the heirs of Katherine Karras Elias had an interest in the court's interpretation of the quit claim deeds, and that the Andreas G. Karras Family Trust and/or its beneficiaries had an interest in the court's interpretation of the divorce decree. Catherine argues that Terry's failure to include all "necessary" parties "constitute[d] a jurisdictional defect" which precluded the court from rendering a declaratory judgment.

{¶ 22} The term "jurisdiction" refers to the court's statutory or constitutional authority to hear a case. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. Ohio's common pleas courts are endowed with "original jurisdiction over all justiciable matters * * * as may be provided by law." Article IV, Section 4(B), Ohio Constitution; *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 20. Jurisdiction has been "provided by law" in R.C. 2305.01, which states that courts of common pleas have "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." *Kuchta* at ¶ 20. The Supreme Court has "long held that the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.' " *Id.*, quoting *Saxton v. Seiberling*, 48 Ohio St. 554, 558-559, 29 N.E. 179 (1891).

{¶ 23} Catherine argues that the trial court lacked "jurisdiction" over the case because, under the statute that provides for declaratory relief, "all persons who have or claim any interest that would be affected by the declaration shall be made parties to the

action or proceeding." R.C. 2721.12(A). However, we disagree with Catherine's interpretation that this provision affects the court's authority to decide matters relating to title to property. Rather, we interpret this provision to require that the trial court not proceed to judgment if all the affected parties have not been joined. *See Plumbers & Steamfitters Local Union 83 v. Union Local School Dist. Bd. of Edn.*, 86 Ohio St.3d 318, 322-323, 715 N.E.2d 127 (1999) (holding that, "in an action for declaratory judgment in which it becomes apparent that not all interested persons have been made parties, the party seeking relief may join the absent party by amending its pleading in accordance with Civ.R. 15," and the trial court abuses its discretion in dismissing a case in such circumstances for lack of the necessary parties); *Potts v. Unglaciated Industries, Inc.*, 2016-Ohio-8559, -- N.E.3d --, ¶ 49 (7th Dist.) (interpreting *Plumbers & Steamfitters Local Union 83* and R.C. 2721.12 as describing an inability *to proceed to judgment* without addressing the need for an additional party or parties, rather than as "a complete lack of jurisdiction over the action as initiated" (Emphasis added)). We reject Catherine's argument that the trial court lacked "jurisdiction" over this case.

{¶ 24} Catherine argues that the other owners of the property and/or their heirs were necessary parties. "Necessary parties * * * are those without whom no decree at all can be effectively made determining the principal issues in the cause." *Oliver v. Natl. Collegiate Athletic Assn.*, 155 Ohio Misc.2d 1, 2008-Ohio-7144, 920 N.E.2d 190, ¶ 17 (C.P.), citing *State ex rel. Crabbe v. Mun. S. & L. Co.*, 111 Ohio St. 178, 189, 144 N.E. 736 (1924). The Supreme Court observed in *Driscoll v. Austintown Assoc.*, 42 Ohio St.2d 263, 273, 328 N.E.2d 395 (1975) that " 'only those persons who are legally affected are proper parties to a lawsuit.' " *Id.*, quoting *Schriber Sheet Metal & Roofers v. Shook*,

64 Ohio App. 276, 285, 28 N.E.2d 699 (2d Dist. 1940). A party is legally affected by a cause of action if the party has a legal interest in rights that are the subject matter of the cause of action. *Rumpke Sanitary Landfill, Inc. v. Colerain Twp.*, 128 Ohio St.3d 419, 2010-Ohio- 6037, 41 N.E.2d 1161, citing, *e.g., Huggins v. John Morrell & Co.,* 176 Ohio St. 171, 175, 198 N.E.2d 448 (1964). In its discussions of this issue, the Supreme Court has also cited Black's Law Dictionary 886 (9th Ed.2009), which defines a "legal interest" as "[a]n interest recognized by law," and as an interest that is "legally protectable," i.e., protected by law. *Rumpke* at ¶ 14; *In re Schmidt*, 25 Ohio St.3d 331, 336, 496 N.E.2d 952 (1986). Thus, whether a nonparty is a necessary party to a declaratory judgment action depends upon whether that nonparty has a legally protectable interest in rights that are the subject matter of the action.

{¶ 25} The trial court concluded that Katherine Karras Elias's heirs and the other owners of the property had a "practical interest in the outcome of the lawsuit," but that it was not a legal interest that was recognized by law. As such, the trial court concluded that this practical interest did not make them necessary parties to Terry Karras's declaratory judgment action.

{¶ 26} We agree with the trial court's conclusion that a person's practical interest in the outcome of a legal dispute does not necessarily require his or her inclusion in a declaratory judgment action. *See Potts v. Unglaciated Industries, Inc.,* 2016-Ohio-8559, -- N.E.3d --, ¶ 50 (7th Dist.), citing *Rumpke* at ¶ 15 ("A nonparty's mere practical interest in the subject matter does not rise to the level of a legal interest"). Moreover, insofar as Terry Karras stated in her affidavit that she acted on behalf of the partnership and the other owners in attempting to quiet title, the trial court could have reasonably concluded

that she represented the other family members' interests in quieting title to the property.

**Standing**

**{¶ 27}** Next, Catherine contends that the trial court erred in granting summary judgment because Terry Karras lacked standing to bring a quiet title action.

**{¶ 28}** Standing has been defined as follows:

"[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, quoting Black's Law Dictionary (8th Ed.2004). Standing depends on "whether the party has alleged such a personal stake in the outcome of the controversy * * * as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Id.*, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 178-179, 298 N.E.2d 515 (1973).

*BK Builders, Ltd. v. E. Ohio Gas,* 5th Dist. Stark No. 2013 CA 210, 2014-Ohio-3850, ¶ 28.

**{¶ 29}** In response to Catherine's argument about Terry's alleged lack of standing, the trial court cited R.C. 5303.01, which governs quiet title actions and states, in pertinent part:

An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest. Such action may be brought also by a person out of possession, having, or claiming to

have, an interest in remainder or reversion in real property, against any person who claims to have an interest therein, adverse to him, for the purpose of determining the interests of the parties therein.

{¶ 30} The trial court concluded that, because Terry is in possession of the property and is an owner of the property in question, along with other owners, she had standing to seek to quiet title to the property. We agree. To hold that a person, such as Terry, with an uncontested ownership interest in property does not have standing to quiet title to the property would undermine the purpose of an action to quiet title, which serves to benefit the owner(s).

{¶ 31} Catherine also argues that Terry lacked standing to enforce either the divorce decree or the 1981 quit claim deeds to the property because she was not a party or beneficiary to either "contract," does not claim title to the real estate through either document, and "claims no privity" with Catherine or Andreas (the parties to the divorce).

{¶ 32} We disagree with Catherine's premises that Terry's action sought to "enforce" the divorce decree or that a divorce decree or quit claim deed is a "contract" in this context, to which the requirement of privity applies. While Terry did seek to clarify the 1981 quit claim deeds insofar as the identity of the signor was ambiguous, Terry had standing to do so because she was one of the owners of the property and sought to remove a cloud on the title. The fact that she was not a signatory to the documents which created the cloud on the title does not prevent her, for lack of standing, from attempting to quiet title.

**Statute of Limitations**

{¶ 33} Finally, Catherine argues that the statute of limitations had run on the quit

claim deeds and the divorce decree because over 30 years had passed. Catherine claims that, pursuant to R.C. 2305.04, the statute of limitations to recover title to or possession of property is 21 years, and if she had failed to perform some act that was required under the deed or divorce decree, the time for forcing her to do so had passed. She also points out that Andreas Karras, who was presumably the aggrieved party as a result of any breach of the divorce decree, had never sought to "enforce his rights." The trial court rejected this argument, finding that R.C. 2305.04, related to the "recovery of real estate," is not applicable to a party, like Terry Karras, who is in possession of the property. Thus, the court found that Terry's claims were not barred by the statute of limitations.

{¶ 34} We agree with the trial court that R.C. 2305.04 was inapplicable in this situation because Terry did not seek to "recover" title to or possession of the property; she had been in possession of it, with her family members, since before the divorce decree was entered and the quit claim deeds signed. Moreover, there is generally no statute of limitations on the enforcement of a court's judgment (the divorce decree), and we reject Catherine's characterization of the divorce decree or the deeds as "contracts" for purposes of any statute of limitations.

{¶ 35} Catherine's first and second assignments of error are overruled.

**Conclusion**

{¶ 36} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Canice J. Fogarty
Charles F. Allbery III
Andrew M. Engel
Thomas W. Kendo, Jr.
Hon. Mary Katherine Huffman