[Cite as *Huron v. McCune*, 2023-Ohio-575.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

City of Huron, Ohio                     Court of Appeals No. E-22-027

    Appellee                     Trial Court No.  2020 CV 0264

v.

Michael P. McCune Revised          **DECISION AND JUDGMENT**
Declaration of Trust
Sally J. McCune, Trustee, et al.      Decided:  February 24, 2023

    Appellant

* * * * *

Todd A. Schrader, Gary A. Ebert, and Jeffrey S. Moeller,
for appellee.

Daniel L. McGookey, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Sally J. McCune, trustee of the Michael P. McCune

Revised Declaration of Trust, appeals the May 24, 2022 judgments of the Erie County

Court of Common Pleas, (1) granting summary judgment in favor of plaintiff-appellee,

the city of Huron; (2) denying her motion for summary judgment; (2) denying her motion to convert her motion to dismiss into a motion for summary judgment; and (3) granting judgment on the pleadings to the city of Huron and dismissing her amended counterclaim. For the following reasons, we affirm the trial court judgment.

## I.      Background

{¶ 2} This action was filed by the city of Huron to quiet title to a parcel of land referred to as Water Lot 1. The city was quitclaimed this property when it acquired Water Lots 2 through 6, in November of 2013. Water Lots 1 through 6 are collectively known as "the Showboat parcel" because that land was the former site of the Showboat Restaurant, which operated from 1971 through 1993. Water Lot 1 is adjacent to Water Lot 2, and is located at the mouth of the Huron River, east of Lake Erie. The parties dispute whether Water Lot 1 is or has ever been fully or partially submerged beneath the natural shoreline of Lake Erie.

{¶ 3} Water Lot 1 was originally surveyed in 1804 and no deed to Water Lot 1 has been found for any period before 1906. In 1875, Water Lot 2 (but not Water Lot 1) was deeded to Romanus Shepherd. Shepherd and his wife quitclaimed both Water Lot 2 *and* Water Lot 1 to August Kuebler, Jr. in 1906, despite the fact that there is no evidence that Shepherd held the deed to Water Lot 1. The grand tax list for Erie County for the years 1910-1914 reflects Kuebler as the owner of Lot 1, but states that the property is "in lake."

2.

Water Lot 1 was dropped from the Erie County grand tax list in the years 1915-1921. From that point on, Water Lot 1 was not assigned a tax parcel number.

{¶ 4} In August of 1958, Kuebler and his wife quitclaimed Water Lot 2 (but not Water Lot 1) to Robert Austin. In July of 1959, Austin and his wife deeded Water Lots 2 to 6 to Walter and Rosemary Hesenburg. Kuebler is the last known holder of a deed to Water Lot 1.

{¶ 5} Sometime after July of 1959, Water Lots 2 to 6 were conveyed to Jacob and June Claus. From 1971 to 1993, the Claus family operated Showboat Restaurant on Water Lots 1 to 6. Water Lot 1 was used for restaurant parking. To get to Water Lot 1, "you entered on the property on the Showboat Restaurant's one-way-designated driveway (around the west side of the building) and drove to the end of the building along a post-and-chain fence." The area was signed as "parking only for Showboat Restaurant."

{¶ 6} In 1993, Showboat Restaurant ceased operation. Jacob and June Claus sold Water Lots 2 to 6 to 10 North Main Street in 1994. The property fell into disrepair. The city purchased Water Lots 2 to 6 from 10 North Main Street in November of 2013. At the same time, 10 North Main Street quitclaimed any interest in Water Lot 1 to the city. The city began a costly project to rehabilitate the Showboat parcel.

{¶ 7} Because Water Lot 1 had not been deeded to the city's predecessors-in-interest, there was a cloud on the title to the property. The city discovered that following the death of the Kueblers and a series of devises, the McCune Trust was the most recent

3.

successor-in-interest to the property, but it maintained that the trust had been divested of any ownership interest in Water Lot 1 either because Water Lot 1 was submerged land held in trust by the State of Ohio, Department of Natural Resources, or because the city's predecessors-in-interest had acquired the land by adverse possession. The city filed an action to quiet title in the Erie County Court of Common Pleas, challenging any purported interest that McCune may claim. It also named as defendants the Erie County Treasurer and the Ohio Department of Natural Resources. McCune counterclaimed against the city for (1) declaratory judgment and quiet title; (2) slander of title; and (3) violation of rights under 42 U.S.C. 1983.

{¶ 8} The city moved for summary judgment on alternative bases: (1) Water Lot 1 is submerged below the natural shoreline of the lake, meaning that under Ohio law, neither the city nor McCune has any enforceable ownership interest in it; or (2) McCune's ownership interest in Water Lot 1 was extinguished through adverse possession of the property by the city and its predecessors-in-interest.

{¶ 9} McCune moved for summary judgment on the city's claims and on the first claim in her own complaint (she dismissed her second and third claims for relief). She argued that Water Lot 1 is not submerged land. She maintained that the city's claim of adverse possession was (1) untimely, and (2) at odds with its submerged-land position. And she insisted that she was entitled to summary judgment on equitable grounds—

4.

including the doctrines of unclean hands, laches, estoppel, quasi-estoppel, and acceptance of the benefits—preventing judgment in favor of the city.

{¶ 10} The city also moved for judgment on the pleadings on McCune's counterclaims. It argued that McCune's action to quiet title was superfluous to its own complaint to quiet title. It made further arguments respecting McCune's second and third claims, which need not be discussed in the context of this appeal because those two claims were voluntarily dismissed.

{¶ 11} McCune moved to dismiss the city's complaint for lack of subject-matter jurisdiction. She argued that the city violated open meetings laws in its deliberations leading up to the purchase of the Showboat parcel, therefore, its purchase of Water Lot 1 was invalid. She later moved to convert her motion to dismiss to a motion for summary judgment, which the trial court denied.

{¶ 12} In judgments journalized on May 24, 2022, the court granted summary judgment in favor of the city; denied McCune's motion for summary judgment; granted the city's motion for judgment on the pleadings; denied McCune's motion to dismiss; and denied McCune's motion to convert her motion to dismiss to a motion for summary judgment. It entered judgment in favor of the city quieting title on the basis that any claim McCune may have had to ownership of Water Lot 1 "was long ago extinguished" by the adverse possession of the property by the city's predecessors-in-interest.

5.

{¶ 13} McCune appealed. She assigns the following errors for our review:

Assignment of Error No. 1: The Trial Court Erred in Granting the City Summary Judgment Based on its Adverse Possession Claim and Failing to Grant McCune Summary Judgment on that Claim[.]

Assignment of Error No. 2: The Trial Court Erred in Failing to Grant McCune Summary Judgment Dismissing the City's Submerged Lands Claim Prior to Dismissing that Claim Without Prejudice[.]

Assignment of Error No. 3: The Trial Court Erred in Denying McCune's Motion to Convert her Motion to Dismiss into a Motion for Summary Judgment and in Failing to Grant Summary Judgment Dismissing the City's First Amended Complaint Based on the City's Violation of Ohio's Open Meeting Law.

Assignment of Error No. 4: The Trial Court Erred in Granting Judgment on the Pleadings Dismissing McCune's Amended Counterclaim and in Failing to Grant Summary Judgment on the Amended Counterclaim.

## II.    Law and Analysis

{¶ 14} McCune challenges several judgments resolving motions she and the city filed in this action, including the city's motions for summary judgment and for judgment on the pleadings, and her own motions for summary judgment and to convert her motion to dismiss to a motion for summary judgment.

{¶ 15} We address each of McCune's assignments of error in turn.

### A.  First Assignment of Error:  Summary Judgment in Favor of the City and Against McCune

{¶ 16} As summarized above, the trial court concluded that any claim McCune may have had to ownership of Water Lot 1 "was long ago extinguished" because the parcel had been adversely possessed by the city's predecessors-in-interest.  In her first assignment of error, McCune argues that the city should not have prevailed on its adverse possession claim because (1) the city filed its action outside the 21-year statute of limitations provided in R.C. 2305.04; (2) the city's use of Water Lot 1 was not continuous, so it cannot add on to the Showboat Restaurant's possession of the lot, which ended in 1993; (3) the evidence did not establish that the Showboat Restaurant's use of the property was exclusive; (4) the city cannot show that its use of the property was "open" if, like it argued, the property was submerged; and (5) by arguing that Water Lot 1 was submerged *and* that it had been adversely possessed, the city took irreconcilable positions giving rise to a genuine issue of material fact—i.e., its "submerged land" claim prevented it from arguing adverse possession because it could prevail on its adverse possession claim only if the land was *not* submerged.

{¶ 17} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts.  *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129,

7.

572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 18} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact.  Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).  A "material" fact is one which would affect the outcome of the suit under the applicable substantive law.  *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826,

8.

675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### 1. Statute of Limitations

{¶ 19} McCune argues that the statute of limitations for filing an adverse possession action is 21 years, therefore, the city's action accrued no later than 21 years after the Showboat Restaurant closed its doors on September 23, 1993. It claims that the city's complaint—filed August 4, 2020—was filed seven years too late. The city responds that there is no statute of limitations within which a party in possession must challenge competing claimants to marshal their conflicting claims via a quiet title action.

{¶ 20} R.C. 2305.04 establishes a 21-year limitations period for a party who professes an interest in property to bring an action against an adverse user of property who is in possession of the real estate. *State ex rel. A.A.A. Investments v. City of Columbus*, 17 Ohio St.3d 151, 153, 478 N.E.2d 773 (1985); *Hays v. Nemenz,* 7th Dist. Columbiana No. 88-C-40, 1989 WL 53618, * 2 (May 22, 1989). It provides that "[a]n action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued * * *." R.C. 2305.04. "If the dispossessed party fails to bring such action within the 21-year period, then he is presumed to have surrendered or abandoned his rights to that real property." *Hays* at * 2–3. At that point, the rights of the record owner are cut off and the possessor becomes the title owner. *Rader v. Brock,* 12th Dist. Preble No. CA97-03-007, 1997 WL 632843, * 2 (Oct. 13,

9.

1997), citing 2 Ohio Jurisprudence 3d (1977) 612, Adverse Possession, Section 97. *See also State ex rel. A.A.A. Investments* at 152 (explaining that once the 21-year period expires, "the former titleholder has lost his claim of ownership and the adverse possessor is thereafter maintaining its possession").

{¶ 21} "If the plaintiff's action is one to determine its interest in the property as against another party in possession, the action is one to *recover* property * * *," and R.C. 2305.04 applies. *McCarley v. O.O. McIntyre Park Dist.,* 4th Dist. Gallia No. 99 CA 07, 2000 WL 203997, * 9 (Feb. 11, 2000). But R.C. 2305.04 does not apply to a party who is in possession of the property. *Karras v. Karras,* 2017-Ohio-5829, 94 N.E.3d 1036, ¶ 33-34 (2d Dist.). A party in possession of property need not seek to "recover" title or possession under R.C. 2305.04. *Id.* Rather, a person in possession of real property may bring an action to quiet title under R.C. 5303.01. *Hays* at * 3.

{¶ 22} To maintain a quiet title action under R.C. 5303.01, "a plaintiff must either be in possession of the real property in question or be out of possession but claiming an interest in the land by way of reversion or remainder." *McCarley* at * 9, citing R.C. 5303.01. "[I]f a plaintiff is *not* in possession of the real property in question, an action to quiet title would not lie." *Id*

{¶ 23} In arguing that the City's claim is governed by R.C. 2305.04 and that it accrued 21 years after the Showboat Restaurant closed its doors on September 23, 1993, McCune mischaracterizes the nature of the city's claim and misunderstands the accrual

10.

period provided under R.C. 2305.04. The 21-year period provided in R.C. 2305.04 is the time within which a party claiming to be the formal titleholder of property (here, McCune) can prevent an adverse possessor from divesting him or her of an ownership interest in that property. The 21-year period in R.C. 2305.04 starts to accrue when the adverse possessor begins to occupy the property. *See Judd v. Jackson*, 12th Dist. Butler No. CA2002-11-291, 2003-Ohio-6383, ¶ 14 ("When appellant began to use the strip of land in 1958 in an open, notorious, exclusive, and adverse manner, the 21–year period of continuous use began."). If the former titleholder fails to bring a claim within that 21-year period, he or she is barred from doing so thereafter. *Wargo v. Weaver*, 7th Dist. Mahoning No. 85 C.A. 26, 1985 WL 4795, * 4 (Dec. 27, 1985).

{¶ 24} Here, the city is the successor-in-interest to the adverse possessor (Showboat Restaurant) and is in possession of the property. Its claim is not governed by R.C. 2305.04. Rather, R.C. 5303.01 provided the mechanism for the city to quiet title to the property.

{¶ 25} Ohio courts have recognized that "[i]n an action for quiet title pursuant to R.C. 5303.01, the statute of limitations does not run against the one who has remained in sole possession of the property." *Adcock v. Weaver*, 5th Dist. Perry No. 07CA3, 2007-Ohio-3630, ¶ 27, citing *Swisher v. Swisher*, 29 Ohio C.D. 307, 39 Ohio C.C. 307, 27 Ohio C.A. 122 (1916). *See also Karras,* 2017-Ohio-5829, 94 N.E.3d 1036, at ¶ 34 (finding that R.C. 2305.04's 21-year statute of limitations did not bar action by possessor

11.

of property); *Chambers v. Wilcox,* 15 Ohio Dec. 629, 630 (Franklin C.P.1905) ("The right of a person in undisturbed possession to quiet his title is not subject to the statute of limitations.").

{¶ 26} *Chambers* explained (under an earlier version of the statute to quiet title) that the statute of limitations will not bar "a pure and simple petition * * * to quiet title," the object of which "is to challenge and provoke any causes of action which may exist in the premises, and by which it may be claimed some outstanding title or right exists in the defendants as to the real estate under consideration." *Id.* This is exactly the situation at bar. Like these other courts, we find that the city's action is not barred by R.C. 2305.04's 21-year statute of limitations.[1]

## 2. Continuous, Exclusive, and Open Use

{¶ 27} "Under the doctrine of adverse possession, a plaintiff can acquire legal title to another's real property if he or she proves exclusive possession and open, notorious, continuous, and adverse use for a period of 21 years." *Houck v. Bd. of Park Commrs. of the Huron Cty. Park Dist.,* 116 Ohio St.3d 148, 2007-Ohio-5586, 876 N.E.2d 1210, ¶ 10, citing *Grace v. Koch*, 81 Ohio St.3d 577, 580–581, 692 N.E.2d 1009 (1998). McCune

---

[1] Moreover, even if R.C. 2305.04 were applicable to this action, the statute of limitations would not accrue until the city took possession of the property in 2013. *See Downtown Enterprises Co. v. Mullet,* 5th Dist. Holmes No. 17CA016, 2018-Ohio-3228, ¶ 43, citing *Cox v. Kimble*, 5th Dist. Guernsey No. 13 CA 32, 2015-Ohio-2470, ¶ 60.

12.

contends that the city's possession and use of Water Lot 1 was not exclusive, open, and continuous for a period of 21 years.

{¶ 28} McCune first claims that the city did not establish the "continuous" element of its adverse-possession claim because there was no evidence of continuity of use between 1993, when the Showboat Restaurant ceased operation, and 2013, when the city acquired it. She emphasizes that Mark Claus—whose affidavit was submitted in support of the city's motion for summary judgment—said nothing of any use of Water Lot 1 after the restaurant closed. McCune insists that the lack of continuity of use between 1993 and 2013, destroyed the city's ability to tack its possession and use of the property on to Showboat Restaurant's possession and use of the property.

{¶ 29} McCune is correct that to tack successive adverse use by different persons, there must be privity or a contractual connection between them, *and* there must be "no interval between the successive possessions during which the use was not adverse.'" *Zipf v. Dalgarn*, 114 Ohio St. 291, 296, 151 N.E. 174 (1926), quoting Thompson on Real Property, vol. 1, § 404. But this case did not require tacking because McCune had been divested of her property interest long ago by the Showboat Restaurant's continuous use of Water Lot 1 for more than 21 years between 1971 and 1993, when the restaurant operated.

{¶ 30} Where adverse possession continues for 21 years, the rights of the record owner are cut off and title is established in the possessor. *Rader*, 12th Dist. Preble No.

13.

CA97-03-007, 1997 WL 632843, at * 2, quoting 2 Ohio Jurisprudence 3d 612, Adverse Possession, Section 97 (1977). *See Alpha Church of Nazarene v. Hoos*, 2d Dist. Greene No. 99CA0036, 1999 WL 980338, * 3 (Oct. 29, 1999) ("[T]itle to property acquired by adverse possession ripens into an absolute interest in the claimant after twenty-one years * * *."). "An interruption in the use of property after the continuous 21-year period of open, notorious, exclusive, and adverse use does not defeat an adverse possession claim." *Judd,* 12th Dist. Butler No. CA2002-11-291, 2003-Ohio-6383, at ¶ 12, citing *Rader* at * 2.

{¶ 31} Here, Showboat Restaurant's possession of Water Lot 1 began no later than 1971, when it opened (and arguably earlier, during its construction) and lasted until 1993. McCune's rights were cut off in 1992, 21 years after Showboat began its adverse use of the parcel. It does not matter whether or how the land was used after Showboat Restaurant ceased operations. McCune had lost rights to the property by that time. The city has shown the "continuous use" element of its adverse possession claim and McCune has failed to demonstrate that a genuine issue of material fact exists concerning this element.

{¶ 32} McCune also claims that the city did not establish exclusive use of the property because there was evidence that the public used Water Lot 1 to park when visiting the Huron Pier, both while the restaurant was operating and after it closed. He

14.

also emphasizes that Claus never said that Showboat Restaurant excluded others from using the property.

{¶ 33} In *Koprivec v. Rails-to-Trails of Wayne Cty.*, 153 Ohio St.3d 137, 2018-Ohio-465, 102 N.E.3d 444, the Ohio Supreme Court explained that generally, "'"exclusive possession can be shown by acts that would ordinarily be exercised by an owner in appropriating land to the owner's own use and to the exclusion of others."'" *Id.* at ¶ 39, quoting 16 *Powell on Real Property*, Section 91.06 (2017). However, the court also acknowledged that to satisfy the exclusivity requirement, "the claimant's possession need not be absolutely exclusive; it need only be a type of possession that would characterize an owner's use." *Id.* at ¶ 39, citing 16 *Powell on Real Property*, Section 91.06. *See also Schaffer v. Wietzel,* 2019-Ohio-572, 132 N.E.3d 220, ¶ 28 (2d Dist.) ("[P]ossession does not have to be absolutely exclusive in order to satisfy the exclusivity element of adverse possession."). "In other words, the adverse possessor must exclude third parties to the extent that the true owner would do the same." *Jennewine v. Heinig,* 2d Dist. Greene No. 95 CA 12, 1995 WL 766005, * 2 (Dec. 29, 1995).

{¶ 34} Claus averred in his affidavit that when the restaurant was constructed, Water Lot 1 was "surrounded by pilings and backfilled within the piling system with fill." It could be accessed only by entering Showboat Restaurant's property via a one-way designated driveway, along which a post-and-chain fence had been erected. "The area was signed as parking only for the Showboat Restaurant."

15.

{¶ 35} McCune offered evidence showing that the public used the parking lot to access the pier and claims that this defeats the exclusivity requirement. But, as stated above, the adverse possessor must exclude third parties only to the extent that the true owner would do so. A true owner would retain discretion whether to take steps beyond erecting a sign to prevent non-patrons from using its parking lot. That the city presented no evidence indicating that Showboat Restaurant exercised such discretion does not lead us to conclude that "exclusivity" has not been established. To the contrary, the Claus affidavit satisfies the "exclusivity" element of the city's adverse possession claim and McCune has failed to demonstrate that a genuine issue of material fact exists concerning this element.

{¶ 36} Finally, McCune argues that the city could not have openly possessed Water Lot 1 if, in fact, it was submerged land. "To be open, the use of the disputed property must be without attempted concealment." (Internal quotations and citations omitted.) *Crown Credit Co. v. Bushman,* 170 Ohio App.3d 807, 2007-Ohio-1230, 869 N.E.2d 83, ¶ 46 (3d Dist.). Claus's affidavit and the affidavits offered by McCune in opposition to the city's motion for summary judgment indicate that for at least 22 years, Water Lot 1 was used as a restaurant parking lot, which patrons, and the public in general, knew. There was no evidence presented that the city or its predecessors-in-interest attempted to conceal its use of Water Lot 1. The city has shown the "openly

16.

used" element of its adverse possession claim and McCune has failed to demonstrate that a genuine issue of material fact exists concerning this element.

{¶ 37} "[E]ach case of adverse possession rests on its peculiar facts." *Montieth v. Twin Falls United Methodist Church, Inc.,* 68 Ohio App.2d 219, 224, 428 N.E.2d 870 (9th Dist.1980). Under the facts of this case, the city has demonstrated that its predecessors-in-interest exclusively possessed and openly, notoriously, continuously, and adversely used Water Lot 1 for a period of 21 years, effectively divesting McCune of any claim of ownership of the parcel.

### 3. Mutually Exclusive Arguments

{¶ 38} The Ohio Supreme Court has recognized for many years that "'the state holds the title to the subaqueous land [of Lake Erie within the boundaries of Ohio] as trustee for the protection of public rights.'" *State ex rel. Merrill v. Ohio Dept. of Nat. Resources,* 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 51, quoting *State v. Cleveland & Pittsburgh RR. Co.*, 94 Ohio St. 61, 79, 113 N.E. 677 (1916). McCune argues that summary judgment should not have been granted here because the city asserted two mutually exclusive arguments: (1) it argued that Water Lot 1 was submerged land, which would mean that the state holds it in public trust, and neither the city nor McCune own it; and (2) it argued that Water Lot 1 was not submerged and that the property had been adversely possessed. McCune maintains that the two arguments

17.

are irreconcilable with one another, and by arguing both, the city itself demonstrated that there exist genuine issues of material fact preventing summary judgment.

{¶ 39} In considering a motion for summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material fact only if it would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999), citing *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (1996), citing *Anderson* at 248. Accordingly, "to determine whether a fact is material, we look to the substantive law of the claim being litigated." *Bd. of Commrs. Mill Creek Park Metropolitan Dist. v. Less,* 2022-Ohio-1289, 188 N.E.3d 641, ¶ 14 (7th Dist.), *appeal allowed sub nom. Mill Creek Metro. Park Dist. Bd. of Commrs. v. Less,* 167 Ohio St.3d 1516, 2022-Ohio-3214, 195 N.E.3d 145, citing *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson* at 248.

{¶ 40} The action at issue is one to quiet title. "A quiet title action is not designed to adjudicate plaintiff's title as superior to the whole world, but only as compared to the other parties." 65 Am. Jur. 2d Quieting Title § 34. "The effect of an action to quiet title is to determine all matters affecting the title to the lands in question 'as between the parties to the suit.'" *Yeager v. Beckley*, 7th Dist. Carroll No. 636, 1996 WL 65942, * 2

18.

(Feb. 12, 1996), quoting 37 Ohio Jurisprudence 3d (1982) 277, Ejectment, Section 242. A third party who claims a superior interest would not be precluded from bringing his own action to challenge the plaintiff's interest and establish his own. *Id.*

{¶ 41} Here, we disagree that the city's arguments are mutually exclusive as they concern *McCune's* claim of ownership of Water Lot 1. Under either theory asserted by the city, McCune would be divested of any claim to Water Lot 1—either because the land is submerged or because it has been adversely possessed. To that end, any dispute over whether Water Lot 1 is submerged land would be material only if the trial court had relied on that theory as the basis for its summary-judgment decision. It did not. It relied on the city's theory that McCune's claim to the property had long ago been extinguished by the Showboat Restaurant's exclusive possession and continuous, adverse, notorious, and open use of Water Lot 1 for a period exceeding 21 years. As such, the competing assertions concerning Water Lot 1's status as submerged land is not a dispute of fact that is material to determining *McCune's* property interest.

{¶ 42} Additionally, we recognize that the state was a party to the action. However, in seeking summary judgment, the city presented the trial court with alternative requests, one that would determine the rights to Water Lot 1 as between the city, McCune, *and* the state, and one that would determine the rights to Water Lot 1 only as between the city and McCune. The latter approach anticipated the dismissal without prejudice of the quiet title action as against the state and suggested that a determination of

19.

rights to Water Lot 1—as between the city and the state—could be resolved outside of litigation. The trial court's judgment was limited to extinguishing McCune's interest and did not address the superiority of interest as between the city and the state. Again, this leads us to conclude that any dispute as to whether Water Lot 1 was submerged was not material to determining title to the property *as between these two particular parties*—the city and McCune.

### 4. Claims of Inequity

{¶ 43} Finally, McCune argues that the city's own inequitable conduct prevents it from succeeding on its claim to quiet title, a remedy rooted in equity. But as we have explained, McCune was divested of any interest in Water Lot 1 long before the city purchased it. McCune's interest ceased when it failed to assert its rights during the 21 plus years that the Claus family operated the Showboat Restaurant—when it exclusively possessed and openly, notoriously, continuously, and adversely used Water Lot 1 for restaurant parking for its patrons. We reject McCune's position that inequitable conduct by the city prevents it from seeking to quiet title to Water Lot 1.

{¶ 44} Accordingly, we find McCune's first assignment of error not well-taken.

### B. Second Assignment of Error: Denial of McCune's Motion for Summary Judgment

{¶ 45} In her second assignment of error, McCune argues that the trial court was required to grant summary judgment in her favor when it granted summary judgment to the city on its adverse-possession claim. She claims that in determining that Water Lot 1

20.

had been adversely possessed, the trial court must necessarily have concluded that the land was not submerged and the city is collaterally estopped from arguing otherwise. As such, the trial court should have granted summary judgment to McCune on her claim that Water Lot 1 was not submerged land. Finally, McCune contends that several equitable doctrines required summary judgment in her favor.

{¶ 46} The city responds that as against the trust, it was not required to prove its own perfect title, "but possession and the absence of a valid contrary claim by the Trust." It further insists that the trial court was not required to adjudicate every reason why summary judgment in favor of the city should be granted. The city maintains that submerged land determinations are not static, and it emphasizes that once the trial court determined that McCune lost title through adverse possession, there was no remedy the trial court could afford the trust.

{¶ 47} McCune's motion for summary judgment sought a judgment quieting title in favor of McCune and dismissal of the city's amended complaint. McCune in her motion for summary judgment did argue that "the city's submerged land claim must be dismissed." But once the trial court elected to dispose of McCune's purported interest in the property under principles of adverse possession, the city's claim that Water Lot 1 was submerged land—and McCune's insistence that it was not—became immaterial in determining McCune's rights to the property as against the city's rights. Having determined that Water Lot 1 had been adversely possessed by the city's predecessor-in-

21.

interest, the court was not required to render findings that had no bearing on its ultimate conclusion that *McCune* was divested of her property interest after the Showboat Restaurant utilized the property for more than 21 years as parking for its patrons. To the contrary, the court's conclusion that Water Lot 1 had been adversely possessed necessitated denial of McCune's motion because it determined that any claim McCune may have had to the property had been cut off in the 1990's.

{¶ 48} Had the trial court proceeded to consider the interests of the city as against the state, resolution of the status of Water Lot 1 as submerged or non-submerged would likely have been necessary. This is not what happened, however. Instead, the trial court dismissed that claim without prejudice to provide the city and the state the opportunity to resolve this dispute outside of litigation. In any event, a finding that the land was not submerged would not have entitled McCune to judgment in her favor because her ownership interest had already been extinguished. McCune could not have prevailed on her action to quiet title under any scenario after the trial court found that Water Lot 1 had been adversely possessed.

{¶ 49} We find McCune's second assignment of error not well-taken.

### C. Third Assignment of Error:  McCune's Motion to Dismiss and Motion to Convert

{¶ 50} In her third assignment of error, McCune argues that the trial court erred by denying her motion to convert her motion to dismiss to a motion for summary judgment. The motion to dismiss was premised on McCune's contention that the city lacked

22.

standing and the trial court lacked subject-matter jurisdiction over the city's claim because the city violated the open meetings laws in acquiring Water Lot 1, therefore, its acquisition of it was void. In its underlying motion to dismiss, McCune argued that the trial court should have dismissed the city's complaint for unclean hands based on open meeting violations—she did not seek to set aside the purchase, but argued that because the purchase was illegal, the city cannot use it as a mechanism to gain title to Water Lot 1.

{¶ 51} The city pointed out that the motion to dismiss was filed after the summary-judgment deadline; a lack of standing does not defeat subject-matter jurisdiction; McCune pled no open-meetings violations and any such claim was time-barred; a claim of adverse possession is premised on one's *possession* of property, not its title to it; and there was no evidence of actual violations of open-meetings law.

{¶ 52} "The trial court has discretion as to whether it converts a motion to dismiss into a motion for summary judgment." *Seminatore v. Dukes*, 8th Dist. Cuyahoga No. 84032, 2004-Ohio-6417, ¶ 19. Here, we find no abuse of discretion in the trial court's denial of McCune's motion to convert her motion to dismiss to one for summary judgment. Allowing her to do so would have been futile here because (1) McCune was divested of her interest in the property long before the city acquired it in 2013, and (2) regardless of the validity of the purchase (and regardless of the quitclaim

23.

deed to the property), the city was in possession of the property, thus it could properly seek to quiet title even if the purchase was deemed invalid.

{¶ 53} We find McCune's third assignment of error not well-taken.

### D. Fourth Assignment of Error:  Dismissal of McCune's Amended Counterclaim

{¶ 54} The city filed a motion for judgment on the pleadings on the basis that McCune's action to quiet title was superfluous to the city's own action.  In her fourth assignment of error, McCune argues that the trial court erred in granting this motion. McCune also claims in her fourth assignment of error that the trial court erred in failing to grant summary judgment on her amended counterclaim.

{¶ 55} In arguing that the trial court erred in failing to grant summary judgment on her amended counterclaim, McCune relies on the arguments made elsewhere in her brief, which we have already addressed in disposing of her first assignment of error.  We need not repeat those conclusions here.

{¶ 56} As to McCune's claim that the trial court erred in granting the city's motion for judgment on the pleadings, McCune maintains that a Civ.R. 12(C) motion may be granted only when the allegations of the complaint fail to state facts under which relief may be granted.  She insists that her complaint stated facts under which relief could be granted and that it is "inconceivable that the trial court would grant the City's Motion for Judgment on the Pleadings under Civ.R. 12(C), while at the same time grant the City's claim for quiet title relief on Water Lot 1."

24.

**{¶ 57}** Under Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In considering a Civ.R. 12(C) motion, the trial court may review only "the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings." *Walker v. City of Toledo*, 2017-Ohio-416, 84 N.E.3d 216, ¶ 19 (6th Dist.). Employing the same standard as a Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted, the trial court must construe as true the material allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Id.* at ¶ 18, citing *McMullian v. Borean*, 167 Ohio App.3d 777, 2006-Ohio-3867, 857 N.E.2d 180, ¶ 7 (6th Dist.); *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act,* 147 Ohio St.3d 42, 2016-Ohio-3038, 59 N.E.3d 1274, ¶ 10, citing *Rayess v. Educational Comm. for Foreign Med. Graduates,* 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18. If it appears from the pleadings and the materials incorporated by reference or attached as exhibits that the nonmoving party can prove no set of facts entitling it to relief, the trial court may dismiss the plaintiff's claims under Civ.R. 12(C). *Ohio Manufacturers' Assn.* at ¶ 10. We review the trial court's judgment de novo. *Reister v. Gardner*, Slip Opinion No. 2020-Ohio-5484, ¶ 17.

**{¶ 58}** Here, the city filed its motion for judgment on the pleadings on McCune's amended counterclaim on February 18, 2022. McCune filed her motion for summary judgment on her amended counterclaim two months later, on April 26, 2022. The city's

25.

motion for judgment on the pleadings was granted on the same day that McCune's motion for summary judgment was denied *and* on the same day that the city's motion for summary judgment was granted. Given our conclusion that the trial court properly granted summary judgment in favor of the city and against McCune, it is unnecessary for us to resolve the question whether the court erred in granting the city's motion for judgment on the pleadings. The trial court judgment extinguishing McCune's interest in Water Lot 1 resolved the parties' dispute and determined their legal relations. A finding that the trial court erred in granting the Civ.R. 12(C) motion would not entitle McCune to any relief, therefore, we decline to consider her fourth assignment of error. *See Tonti v. Hayes,* 6th Dist. Lucas No. L-05-1202, 2006-Ohio-2229, ¶ 28 (declining to address additional assignments of error where there was "no longer any existing legal relations between appellant and appellees" and "determination of appellant's remaining assignments of error would be purely academic").

{¶ 59} We find McCune's fourth assignment of error not well-taken.

### III. Conclusion

{¶ 60} We conclude that the trial court properly granted the city's motion for summary judgment on its claim to quiet title as against McCune, and it properly denied summary judgment to McCune on her amended counterclaim to quiet title. The record evidence demonstrates that there exist no genuine issues of material fact that McCune was divested of her ownership interest in Water Lot 1 by Showboat Restaurant's adverse

26.

possession of the property from 1971-1993. We find McCune's first assignment of error not well-taken.

{¶ 61} We conclude that the trial court was not required to grant summary judgment in McCune's favor on the city's submerged-land claim when it granted summary judgment to the city on its adverse-possession claim. Having determined that Water Lot 1 had been adversely possessed by the city's predecessor-in-interest, extinguishing McCune's interest, the court was not required to determine whether Water Lot 1 was submerged land. This issue was not material to resolving rights to Water Lot 1 *as between the city and McCune.* We find McCune's second assignment of error not well-taken.

{¶ 62} We conclude that the trial court did not abuse its discretion when it denied McCune's motion to convert her motion to dismiss to one for summary judgment. Allowing her to do so would have been futile under the circumstances of this case. We find McCune's third assignment of error not well-taken.

{¶ 63} We find that it is unnecessary to consider whether the trial court erred in granting the city's motion for judgment on the pleadings because a finding that the trial court erred in granting the Civ.R. 12(C) motion would not entitle McCune to any relief under the circumstances of this case. We find McCune's fourth assignment of error not well-taken.

27.

**{¶ 64}** We affirm the May 24, 2022 judgments of the Erie County Court of Common Pleas, (1) granting summary judgment in favor of the city of Huron; (2) denying McCune's motion for summary judgment; (2) denying her motion to convert her motion to dismiss into a motion for summary judgment; and (3) granting judgment on the pleadings to the city of Huron and dismissing McCune's amended counterclaim. McCune is ordered to pay the costs of this appeal under App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.                    _____
                                                        JUDGE
Gene A. Zmuda, J.

                                          _____
Myron C. Duhart, P.J.                                   JUDGE
CONCUR.

                                          _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.